You may proceed. Morning, Your Honor. May it please the Court. My name is Juan Carlos. I represent the appellant Mr. Mickey. I was also trial counsel for Mr. Mickey. Looks like today is San Diego day at the Knight Circus. Welcome. The traffic is just as bad. You should come up the night before. I did. The night before was a four-hour drive. Oh, no. Well, Your Honor, we have two basic issues here that Mr. Mickey is asserting here. And I want to address the 404B evidence first and then the Constructing Amendment second. Because I think the 404B evidence was pretty important in this particular case given the scenario that was presented in the trial. What we have is essentially a pimping case and not like the old pimping cases we used to have 10, 15 years ago. There's a new way that this is done through the Internet. There's no walking the streets. And that's how all of this took place in the first place. We know that for this particular issue, K.I., Karina, was his girlfriend, always has been his girlfriend, before she started pimping. Before she started, I'm sorry, before she started prostituting for Mr. Mickey, she was a prostitute herself. In fact, Mr. Mickey met her as a prostitute. She had her own business going. She had her own websites going. She had her own postings going. And Mr. Mickey developed a relationship with her. The problem that we have here is that we brought in, the government brought in a February 14th, Valentine's Day, how ironic. A year ago today. A year ago today on a day of love. Apparently there was no love. They started off normally, but then a domestic, we believe, a domestic violence issue occurred. And so the domestic violence was only that, limited specifically to an altercation that they had with their relationship or in their relationship versus pimping or anything related to prostitution. And the government, through pictures of K.I. lying on the ground, blood, a police officer coming in and testifying about what he saw after the event, was able to bring that on to show that he would somehow use this in his motive or a scheme to continue her in this prostitution, which just wasn't the case. Well, but you had ample opportunity to argue against that. The judge was just deciding to admit or deny. It's up to the jury and you as counsel to construe the evidence. So you had plenty of opportunity to say, oh, this is just a domestic, this has nothing to do with the underlying crime. It was just a disagreement between, you know, relationship disagreement. Except that I think that's the basis of 404 is that the district court should have kept it out of the case because once it's in front of the jury, you know, you can do all the argument you want. You've got a woman who's already associated with prostitution. You have Mr. Mickey, who the court wasn't there. I mean, you know, he doesn't look like a middle class white American. I mean, he essentially, you know, he was an African-American male. I think a jury would look at him and his relationship with women who are known prostitutes and they'll just throw in any type of evidence that they have against him to make him say, well, yeah, that's exactly what he was doing. That's more of a 402, 403 argument than a 404 argument. You're just saying it was too prejudicial. It was too prejudicial, yes. His argument wasn't his argument that these prostitutes worked for him voluntarily. Or it wasn't forced coercion and that it was a voluntary arrangement. Correct. And so this, at least from the prosecution's point of view, could be taken as a response to that argument, which is, you know, this is his M.O. This is the kind it's indicative of the kind of force he uses and the type of coercion he uses on prostitutes. So why wouldn't that be legitimate? Because there was no relation to prostitution itself. There was nothing presented regarding that particular incident that it was related to prostitution other than the fact that they had a relationship and she was a prostitute. And she is a prostitute and they continued this relationship. So, I mean, you're suggesting that somehow to be admissible the evidence would have to be tied to a specific act of prostitution? Or at least the method or at least the idea what the government was trying to present as to why it should be admitted as it shows his common plan or his scheme or his method of what he does with prostitutes. So there should have been some type of evidence which related to prostitution. Sure, if he was driving her to a location, you know, to answer an ad or to see a john and something happened where he beat her. If she said, look, I don't want to prostitute anymore and she ran and he chased her down the street and hit her with a rock. But if you just have an argument with somebody that you're in a relationship with, how is that related to? I thought she was trying to leave. She was trying to leave him the relationship, not the prostitution relationship. She was, once again, a prostitute before. But the relationship included pimping. It was not just a personal relationship. It was a relationship that involved prostitution. Well, I mean, if you can parse them in, there was a relationship that involved a, I guess, a financial motive, which is prostitution. I guess it's a business relationship. But there is, I mean, that's essentially, if anybody's involved in a personal relationship and a business relationship, that means anything that they do in the personal relationship is relevant to the business. Well, it's a little different in prostitution. I mean, we're not talking about running a magazine subscription agency or something. That's why I, at the beginning, was proposed that the method of prostitution has changed. You know, we don't have women walking the streets anymore. It's very rare. And so this is mostly done through the Internet. And so there's the relationship. Why are pimps even needed anymore? That's what I was asking, too. I mean, I've had a couple of these cases now, and it's all done on the computer. Well, it's because they're victimizing and exploiting vulnerable women, right? I think that I've represented many people accused of this crime on both state and on the federal side, and also women. And they just, you know, sometimes they want to adhere to the old protocol, I guess. I'm just saying, why did the women who wanted to engage in prostitution need the pimps? I guess for protection. Protection? Mr. Mickey was about 5'4", though, so I don't know why he wanted protection. But I have another question. It's actually more relevant to me. Was a limiting instruction requested or given in terms of the 404B evidence? The standard instruction was given. So there was, I believe, a limiting instruction, but that doesn't mean anything. I hate to say this, Your Honors, but that doesn't mean a lot during a jury trial. A jury is going to do what they're going to do. They're going to look at the evidence and look at this whole thing. And even though they said you can only use it for this, they're going to pound it on him. And what they had in this case was a picture of a woman lying in the street. She's got a neck brace on. There's blood. It was pretty horrific pictures. And it was a pretty horrific domestic violence incident. Remember, we had a district attorney's office who had information that this person had been identified as a pimp. He had misdemeanor convictions, basically the same type of activity. And they didn't go after him for pimping or prostitution. It was a 245, an ADW, exactly what it was. It was limited to that particular relationship. Now, on to the ‑‑ I'm running out of time here. To the constructive amendment, Your Honor, there's ‑‑ that was an interesting aspect of the case in that the jury, as indicated, because we moved in our briefs, was very, very confused as to how to proceed. The court instructed them that they should find each independent means, fear, duress, force, beyond a reasonable doubt. And then they requested more clarification as to the other factors. And then you saw what the colloquy was between the court and counsel in that particular case. And it was our position that if there was a mistake made by the court, they've already told them that they have to deliberate, they have to find beyond a reasonable doubt these particular factors in order to continue the prostitution. So to tell the jury, we know from the jury's note that they were basically non‑unanimous as to any particular type, any particular form. They were non‑unanimous as to force, non‑unanimous as to fear, duress, all of those. And then the court says, well, you can go ahead and find any combination. You don't even have to tell us which one. Kennedy. Well, the statute says that. Sotomayor. I understand. Kennedy. It's not just the court freelancing. The statute says that. Sotomayor. Except that they've already been told ‑‑ we already know that they are non‑unanimous as to how it happened. And so would you have ‑‑ Kagan. Do you want a unanimous instruction for each of those? You want some kind of special verdict form? Sotomayor. I believe so, because then the combination of factors that basically allows the jury just to say, you can have 12 people in a room, two people believe one thing, 10 people believe these two people have no idea what they're talking about.  How is that a unanimous jury? But if it could be any combination, I thought the Supreme Court already passed that in Robinson and Shadd. So how would we distinguish this situation from the Shadd and the Richardson cases? I think we need to look at this particular case. I mean, this jury's instructed in a particular fashion. You know, my client's constitutional rights are at stake. He's in prison doing a ‑‑ he's doing like 18 years in prison, which is a serious, serious amount of time, for offense, which in state court, which would be relatively, you know, a third of that, if that. And so he's in trial, and the court instructs a jury as to how they should approach a certain thing, and then guts the entire way that this jury is doing the deliberation and says, you know, you can go find any other way you want. And I think that that was patently unfair. And I understand ‑‑ I understand the cases that the government cites, but unfortunately under these circumstances, we're in a jury trial with one individual charged with crimes which would send him to prison for a long time. And it allowed the jury ‑‑ I mean, I appreciate the situation he's in by not being prosecuted, for example, in the state court. But my question more precisely is, is there some other case we should look to other than these Supreme Court cases? Just the cases that have been presented, Your Honor.  Thank you. Thank you. Good morning, Your Honors. May it please the Court, Mark Rahey for the United States. I will address the issues in the same order that my opponent did. Starting with the Rule 404B, the government would submit that the district court did not abuse its discretion in admitting this evidence, notwithstanding the defense claims that this was just a domestic spat between two people in an unconventional relationship. The district court was entitled to view things as the government saw it for purposes of its gatekeeping function under Rule 404B. And in this case, I know Judge Wardlaw, I believe somebody asked, you know, what's the connection to prostitution? The government had an expert witness, an Oceanside police detective named Jack Reed. He testified at page 741 of the supplemental excerpts of record that prostitution has certain rules. And one of those rules is that, quote, the girl working as a prostitute is supposed to stay with her pimp, end quote. Here, from the testimony of the defendant's ex-wife, there was testimony or evidence in the record that the argument was about her wanting to leave. So we would submit that under the 404B standards, there was probative value in this evidence. And not only that, I think as I explained in my brief, this was somewhat of an unusual situation. This was an unwilling victim. This victim, Kay I, she actually testified for the defense, even by the time of trial, I believe still by the time of the pre-sentence report, represented that she was in love with this defendant. She minimized and denied her status as a victim. In fact, when she was asked about this incident at trial, she still said, oh, I threw a rocket up in the air. It was very muddled testimony. In those unique circumstances, the government would submit this evidence, this 404B evidence was independent, objective proof of her being a victim. The only evidence of violence by the defendant in this case was a deuce, both from his ex-wife and from other prostitutes. And as we tried to explain in the brief, we believe in these witnesses. Otherwise, we wouldn't have put them forward. But there's always a concern that the jury may not. Therefore, at least in the unique facts of this case, the probative value, we believe, was particularly heightened by the fact that this was independent evidence. This was the defendant's guilty plea. And it was Valentine's Day 2012. The timeline in the indictment began, I believe, in 2013. This had just happened the year before. This wasn't something 10 or even five years ago. This was very recent. And that also factors into the 404B analysis. And as this court knows, that is abuse of discretion standards. So we believe on this record, abuse of discretion is obviously very deferential. The district court did not abuse that discretion. And Mr. Carlos is a very good attorney. When I reread the closing argument, he spared no argument to, by the time it came, the critical time in front of the jury to say, look, ladies and gentlemen, the government is going to portray this prior conviction in the worst possible light. But they were in a relationship. It's unconventional. We can't judge that. You have to, you know, look at this fairly. So he put the right argument forward. And we would submit that, you know, even if this court sees this as 404B evidence, of course, our first argument is that this was a named victim. We would say it's inextricably intertwined. This court, in 2010, in the United States versus Todd case, defined the mens rea for 1591 in a very unique way, basically saying you have to have evidence of a pattern of coercion or an established modus operandi. So, therefore, these 1591 cases I don't think will ever be presented on just one incident alone. There needs to be evidence of a pattern of misconduct. Insofar as this evidence was against violence of the name victim from just a year before the timeline charge, we would say there was no error. And unless the court has questions. Another question. Why wasn't the language, any combination of such means, included in the indictment since it's in the statute? Your Honor, I asked one of the trial attorneys. He said, I honestly don't know. The best answer I got, and this is just one of the unfortunate things of the modern era, I think the template that they used for that indictment had come from a previous 1591 case that had not only adult victims, but also juveniles or minors. And in that case, there had been a lot of, I mean, I really don't have a good explanation. But our argument would be that it was a technical deficiency. When this court looks, when I look to the constructive amendment cases of this circuit, there is a phrase that continually comes up that the instruction substantially amended or substantially altered the crime. For instance, in Davis, which I know my opponent puts heavy reliance on, I mean, of course, that was not a plain error case as this is. But more importantly, in that case, the language that was left out changed the crime, and that was the sex trafficking of a minor from one that involved mens rea to one that did not. And in that situation, I think the prejudice was manifest. That's an entirely different defense. Here, we would submit when there are four antecedent means in a statute, and if the jury finds that where four options exist, a grand jury's finding that each is individually present, we would argue necessarily implies a finding that the combination of any two or more is present. And another thing I believe Judge Notto pointed out, and we would like to emphasize this point, a lot of the constructive amendment cases, I guess you could say the entirely, arguably a theory that's not present in the statute. This is not such a case. And we would also point out that had that language been in the indictment, this trial would not have changed one iota. It would have been the same evidence, the same victims. I believe in some of this Court's constructive amendment cases, maybe Moody v. Daggett, we cited a case, there was a prostitution, it was an entirely different victim that was then evidence was introduced at trial. That was not the case here. And we would submit if this defendant, he knew from the indictment that the grand jury found force, threats of force, fraud, coercion, he therefore was on notice that he had to defend against all four of those grounds. And his defense did encompass that. He said, you know what, these women, I'm a pimp, they're prostitutes, but I'm pretty much just their broker. I didn't force anybody to do anything. And, I mean, maybe Mr. Carlos on reply can articulate a little more. We never saw any evidence below or at least any argument as how the defense would have been any different. I mean, the fundamental notice concerns that underlie issues of constructive amendment on the unique facts of this case we would submit are just not present. So can I just ask one other question? Given the Supreme Court's holding in Richardson that elements need to be found unanimously, why the form of the special verdict? I've asked that to the President. It's something that we almost chackle ourselves. We're going above and beyond what the law requires. And I think sometimes there is concern, you know, this statute, it is, it's only been around since 2000 in legal terms. That's not that long. There's not a lot of case law out there. I think sometimes the trial prosecutors, in fact, they use the phrase, we don't want to get in trouble with the Ninth Circuit. If something changes about the way certain evidence of coercion, let's say, or what is sufficient to be fraud changes, if we have that special verdict, we will have clarity. And you see it a lot in the juvenile cases, too, where, you know, they're charged with both force and trafficking a minor. But it's something that I believe that we, again, we basically shackle ourselves. But just because the government chooses to do that, we would say that doesn't now make it a constitutional right. Judge McKeon, you are correct. In Richardson and Shaw, the Supreme Court made crystal clear that it's elements that need to be unanimous, not means. Not means. But, of course, you may be confusing things yourself by trying to be overly cautious, right? Yeah. I mean, in retrospect. I mean, that's what he's saying is, however it shook down and was shaking, the jury could have been confused here. It could have been. You know, they asked the question. I would submit this. There were two questions. One of them had to do with the old plead in the conjunctive, prove in the disjunctive. This Court has seen that before. In United States v. Kim in 1999, it's a case cited in our brief, this Court squarely held that that kind of confusion was not enough to warrant an additional instruction. They said that just goes to the legal standard, and it requires an easy answer. And here I would submit that Judge Moskowitz gave that easy answer. Yes, you see it charged in the conjunctive, but you can find it in the disjunctive. But I would also point out that when the judge entered or read the supplemental instructions, and this is an excerpt of record, page 11, he invited the jury to read along, and then an excerpt of record, page 12, he says, did anybody not get that? I don't see any hands raised. So we would submit that, sure, they had the one question. They were a conscientious jury, but the Court took the means to redress any possible confusion, and the record has evidence that there was no lingering confusion. And the last thing I guess I would say is there never was a note from the jury that they were hopelessly deadlocked. There never was an Allen charge. So to assume that we don't know that they were non-unanimous when they asked this question, I think it's better explained by the same issue that happened in United States v. Kim, seeing the conjunctive, then finding disjunctive, and the district court clearly addressed that. And unless there are any further questions, the government would submit. Thank you. Appreciate it. Yes, you may. Just a little point. I did tell Ms. Foster, the trial lawyer, you're going to get in trouble with the Ninth. I wouldn't call it trouble. Just the one last thing. The combination of factors when it was added to the instruction was very difficult because although we talked a little bit about it in closing arguments, it wasn't the same type of theory of prosecution. So I didn't have an opportunity to really discuss that and to tell a jury that, look, you just can't fall back on that as some type of catch-all. You really need to find these things. You need to think about what you want, what you saw of the evidence, what's been proven. So bottom line is I didn't get a chance to make that argument to a jury. And when that judge gave that instruction, that jury came back after deliberating for quite some time. The jury came back, like, within, I think, 30 minutes. So, I mean, it was a devastating instruction. Thank you. Thank you. Thank you both for the excellent arguments. United States v. Mickey is submitted.
judges: McKeown, Wardlaw, Donato